**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE LAUGHLIN PRODUCTS, INC.,  :     MDL Docket No. 1498
PATENT LITIGATION      :
             :

## <u>MEMORANDUM</u>

**Baylson, J.**                  **May 28, 2003**

    The principal issue presented in this multidistrict patent infringement litigation is whether these proceedings should be stayed pending a reexamination of the patent in suit by the Patent and Trademark Office ("PTO").  Before deciding whether to grant such a stay, the Court believes it is relevant to consider what impact the results of the reexamination may have on the pending litigation.  Specifically, if the PTO, upon reexamination, confirms the claims of the patent, or permits amendments to those claims, or if on the other hand, it finds the patent invalid, what impact does the PTO's conclusion have on the proceedings in this Court?  Oral argument on April 29, 2003 included a dialogue with counsel on these issues.

    This case is unusual because the Plaintiff, the patentee, is the party seeking reexamination of its own patent by the PTO, and is also seeking the stay of proceedings in this Court.  Usually, the alleged infringer is seeking reexamination by the PTO, and is also usually the party seeking a stay of the District Court proceedings.  However, in this case, the Defendant not only opposes the stay, but asserts the entire litigation should be dismissed pending the PTO reexamination.  Defendants also seek an injunction barring Plaintiff from filing any additional actions while the matter is pending before the PTO.

For the reasons which follow, Plaintiff's Motion to Stay will be granted, in part, Defendants' Motion to Dismiss will be denied, and this Court will place certain conditions on Plaintiff's initiation of additional actions.

## I.    <u>Background and Procedural History</u>

Laughlin Products, Inc. (herein "Plaintiff")[1] is the assignee of United States Patent No. 5,922,333 (hereinafter "the '333 patent"), which claims a system for spraying self-tanning solutions and other compositions on the human body.  The Defendants in this matter include Hollywood Tanning Systems, Inc. ("HTS"), Hollywood Tans, Inc., Heartland Tanning, Inc., and numerous franchisees and distributors, having retail tanning salons or distributorships in various states ("Defendants").  Plaintiff originally brought seven separate actions against particular defendants, alleging infringement of the '333 patent.  One of those seven actions was brought in this district court, while the other six were brought in six different federal districts.  HTS brought its own action against Plaintiff, seeking a declaratory judgment of patent invalidity and non-infringement with respect to the '333 patent, in the United States District Court for the District of New Jersey.

On January 9, 2003, the Judicial Panel on Multidistrict Litigation issued a Transfer Order, transferring to this Court the seven actions then pending in other districts, for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.  On January 28, 2003, the Panel transferred eight additional actions to this Court, to be included in this MDL.  Finally, on March

---

[1]  Dr. Thomas Laughlin, the inventor of the patent in suit, is a defendant to HTS's declaratory judgment action.  Throughout this Memorandum and Order, the term "Plaintiff" will refer to Dr. Laughlin and Laughlin Products, Inc., collectively.

6, 2003, the Panel transferred one more action, and, on April 17, 2003, transferred the latest action into this MDL proceeding.

On February 14, 2003, Plaintiff filed a First Amended Complaint, applicable to all actions. Defendants filed an Answer on March 14, 2003, including counterclaims of invalidity and noninfringement – as well as unfair competition, defamation, disparagement, and tortious interference with prospective economic advantage. On March 28, 2003, Plaintiff filed an Answer to those counterclaims. This Court has held two pretrial conferences in this MDL, on January 29, 2003 and April 4, 2003.

Only days before filing its First Amended Complaint, on February 12, 2003, Plaintiff filed a Request for Ex Parte Reexamination with the United States Patent and Trademark Office ("PTO"), asking that agency to reexamine the validity of the '333 patent, in light of two prior art patents. On March 1, 2003, the PTO granted Plaintiff's Request, finding that the two prior art patents raise a substantial new question of patentability, which the PTO had not decided in its previous examination, with respect to certain claims of the '333 patent. In connection to the reexamination proceedings, Plaintiff has submitted proposed amendments to claims 1 and 34 of the patent, as well as two entirely new claims, numbered 41 and 42.

Immediately following the PTO's decision to begin reexamination of the patent in suit, Plaintiff filed its Motion to Stay, by which Plaintiff seeks a stay of these MDL proceedings pending the reexamination. Also pending is Defendants' Motion to Dismiss and Enjoin, seeking dismissal of the patent infringement suits without prejudice, and an injunction barring Plaintiff

from filing any additional actions against salon owners and distributors, not yet parties to the

litigation.[2]

## II.    Ex Parte PTO Patent Reexamination and Its Potential Impact on this Litigation

Congress has provided for PTO reexamination.  Any person at any time may file a request

with the PTO for reexamination of any claim of a patent, on the basis of any prior art.[3]  See 35

U.S.C. § 302.  The PTO will grant the request for reexamination if "a substantial new question of

patentability affecting any claim of the patent concerned is raised by the request."  35 U.S.C. §

303(a).  In the course of an ex parte reexamination proceeding,

> the patent owner will be permitted to propose any amendment to
> his patent and a new claim or claims thereto, in order to distinguish
> the invention as claimed from the prior art . . . or in response to a
> decision adverse to the patentability of a claim of a patent.  No
> proposed amended or new claim enlarging the scope of a claim of
> the patent will be permitted in a reexamination proceeding under
> this chapter.

35 U.S.C. § 305.  Upon completion of the reexamination process, the PTO "will issue and

publish a certificate canceling any claim of the patent finally determined to be unpatentable,

confirming any claim of the patent determined to be patentable, and incorporating in the patent

any proposed amended or new claim determined to be patentable."  35 U.S.C. § 307(a).[4]

---

[2]  Defendants had filed, but have now withdrawn, a motion to enjoin Plaintiff from
publicizing information about this litigation.  See Defendants' Reply Brief at 11.

[3]  Chapter 30 of Title 35, United States Code, pertains to ex parte reexamination, which is
the type of PTO proceeding initiated by Plaintiff in this instance.

[4]  In a reexamination proceeding, if the patent owner is dissatisfied with the PTO's
determination, he may appeal to the Board of Patent Appeals and Interferences, and then to the
Court of Appeals for the Federal Circuit.  See 35 U.S.C. §§ 134(b), 141, and 306.  Only after
such appeals have terminated, or the time for such appeals has expired, will the PTO issue a
reexamination certificate.  See 35 U.S.C. § 307(a).  At oral argument, Plaintiff's counsel stated

-4-

As noted above, this case is unusual because the Plaintiff-patentee is seeking

reexamination.  Plaintiff's counsel suggested that Plaintiff has sought reexamination because "the

Patent and Trademark Office is the appropriate forum in which to test the validity of the claims

in the application, and the amended claims that we have put forth."  Transcript of Oral Argument

(April 29, 2003) at 4.  Plaintiff's counsel further explained:

> Our strategy is to come out of the Patent Office with a patent that
> has been reexamined and allowed and issued as a Reexamination
> Certificate by the Patent and Trademark Office, so that the issue
> has been decided by the experts before we get here so we hopefully
> don't have to argue it again before [this Court].

Id. at 4-5.

The United States Court of Appeals for the Federal Circuit has held that a district court,

in deciding a claim of patent invalidity, must give "credence" to a PTO reexamination

proceeding, which has upheld the validity of patent claims involved in the litigation, where the

prior art asserted in the district court was "much the same" as the prior art presented before the

PTO in the reexamination.  Custom Accessories, Inc. v. Jeffrey-Allan Industries, 807 F.2d 955,

961 (Fed. Cir. 1986).

> Nor did the district court give any credence to the PTO
> reexamination proceeding, which upheld the validity of claims 1
> and 6 despite the presence of much the same art as was presented
> before the district court.  In Interconnect Planning Corp. v. Feil,
> [774 F. 2d 1132, 1139 (Fed. Cir. 1985) (quoting Fromson v.
> Advance Offset Plate, Inc., 755 F.2d 1549, 1555 (Fed. Cir. 1985)],
> this court stated that an examiner's decision on an original or
> reissue application is "evidence the court must consider in
> determining whether the party asserting invalidity has met its
> statutory burden by clear and convincing evidence," and that, upon
> reissue, the burden of proving invalidity was "made heavier."

---

"we're not looking at an appeal situation."  Transcript of Oral Argument (April 29, 2003) at 5.

Id. Following the Custom Accessories decision, the court in E.I. du Pont de Nemours & Co. v. Polaroid Graphics Imaging, Inc., 706 F.Supp. 1135 (D.Del. 1989), held that, where the PTO has issued a Reexamination Certificate, the burden of proving invalidity "is more difficult to satisfy, especially because all the prior art upon which it bases its anticipation defense . . . was before the examiner at both the original and the reexamination proceeding." Id. at 1141. Moreover, the party alleging invalidity

> faces the burden of showing that the PTO failed to perform its normal functions in the initial proceeding and the reexamination proceeding. Thus, although the presumption of validity is merely a procedural device, which is not strengthened by reexamination, "the exhaustive consideration given the prior art by the PTO during [reexamination] must be weighed in determining patentability."

Id. (citations omitted) (emphasis added). Accordingly, when the PTO, upon reexamination, has confirmed or amended patent claims despite certain prior art, a district court analyzing the validity of those claims – in light of the same prior art – must recognize a rather formidable presumption of validity. See also Pegasus Dev. Corp. v. DirecTV, Inc., No. Civ.A. 00-1020, 2003 U.S. Dist. LEXIS 8052, at *2 (D.Del. May 14, 2003) (granting stay pending ex parte reexaminations, and observing that "after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain").

The Federal Circuit has explained that the "innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought `doubtful.'" In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985) (citing legislative history at H.R. No. 66-1307, 96th Cong., 2d Sess., at 3-4 (1980)).

> In a very real sense, the intent underlying reexamination is to "start over" in the PTO with respect to the limited examination areas involved, and to re examine the claims, and to examine new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding.

Id. (emphasis original).  The court has also noted that reexamination "provides a mechanism for enabling the Patent and Trademark Office to review and correct an initial examination."  Laitram Corp. v. NEC Corp., 952 F.2d 1357, 1360 (Fed. Cir. 1991).

The Federal Circuit has again recently considered the impact of a completed reexamination upon the viability of infringement claims relating to the reexamined patent.  See, e.g., Laitram Corp. v. NEC Corp.,163 F.3d 1342, 1346 (Fed. Cir. 1998).  The general rule is that the owner of a reexamined patent "is entitled to infringement damages, inter alia, for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are `identical.'"  Id. (citing 35 U.S.C. §§ 252 and 307(b)).  Claims in a reexamined patent are considered "identical" to their counterparts in the original patent if they are "without substantive change."  Id.

In determining whether reexamined patent claims are substantially changed, courts look not merely to alterations in the language of the claims, but, rather, to changes in the "scope" of the claims.  Id.  If the court determines that certain reexamined patent claims are substantially changed, the patentee may recover damages only for infringement of those claims which occurred after the date on which the PTO issued its reexamination certificate, thus cancelling, confirming or amending the patent claims.  See id.

-7-

III.    **Should This Court Enter a Stay of All Proceedings, or Dismiss Plaintiff's Complaints Without Prejudice, or Grant Defendants' Motion to Enjoin?**

A.  **Plaintiff's Motion to Stay**

While Plaintiff raises several justifications for staying these MDL proceedings pending the PTO reexamination, Defendants oppose Plaintiff's Motion to Stay on various grounds, including unjustified delay and undue prejudice.

1.  *Justifications for Issuing a Stay*

The Federal Circuit Court of Appeals has recognized that a district court may properly stay proceedings in a patent case pending the PTO's reexamination of a patent in suit.  See, e.g., Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).  This Court has "the inherent power and discretion to stay an action pending the reexamination of a patent by the PTO."  Purolite Int'l, Ltd. v. Rohm & Haas Co., No. Civ.A. 91-2740, 1992 U.S. Dist. LEXIS 8252, at *6 (E.D. Pa. June 12, 1992).

In deciding whether to stay patent litigation proceedings pending PTO reexamination, several district courts have considered the following three factors:  (1) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party, (2) whether a stay will simplify the issues, and (3) whether discovery is complete and whether a trial date has been set.  See Gioello Enterprises Ltd. v. Mattel, Inc., No. Civ.A. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001); Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing cases).

Plaintiff asserts that the PTO, rather than this Court, is the best forum for determining the patent's validity.  Defendants in this MDL, as noted above, have initiated a declaratory judgment

action, seeking a finding of invalidity. As one court has explained, the PTO "is in a better position than the Court to evaluate the validity of the ['333] patent in view of the prior art references." Brown v. Shimano American Corp., No. Civ.A. 88-6565, 1991 U.S. Dist. LEXIS 9431, at *2 (C.D. Cal. Jan. 29, 1991). Moreover, "proceeding with a parallel declaratory judgment action would add to – not subtract from – uncertainty, insecurity, and controversy." United Sweetener USA, Inc. v. NutraSweet Co., 766 F. Supp. 212, 217 (D.Del. 1991).

Plaintiff further asserts that a stay at this point would simplify the MDL and reduce its costs. In fact, Plaintiff suggests that, whatever the PTO decision turns out to be, it will likely stimulate settlement. But, most importantly, Plaintiff contends that a stay is appropriate because this MDL is still in its earliest stages. Plaintiff cites several instances in which courts have stayed patent litigation proceedings pending PTO reexamination, in part because the parties had not yet undertaken expensive discovery or pretrial preparations. See, e.g., ASCII Corp. v. STD Entertainment USA, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); Implant Innovations, Inc. v. Nobelpharma AB, No. Civ.A. 93-7489, 1994 WL 68498, at *3 (N.D. Ill. Feb. 25, 1994).

Finally, Plaintiff argues that it was entirely within its rights as a patent owner, in waiting as long as it did to request reexamination with the PTO. Plaintiff states that it decided to seek reexamination when HTS filed its declaratory judgment action; then, Plaintiff waited only until the MDL consolidation was complete before requesting reexamination, and, promptly thereafter, sought a stay of the MDL proceedings.

2. *Defendants' Claims of Unjustified Delay and Undue Prejudice*

Defendants claim that Plaintiff knew about the two prior art patents pertinent to the reexamination for well over two years, before actually requesting reexamination from the PTO,

causing unjustifiable delay in the reexamination proceeding and this litigation. Since filing its

series of suits against salon owners, Plaintiff has actively publicized this litigation to the tanning

industry, mostly via Plaintiff's Internet website. See Declaration of Jonathan M. Korn, Exs. G-H.

Defendants assert that, if the stay is granted, Plaintiff will still be able to file additional suits

against salon owners and publicize the litigation – all to the competitive disadvantage of

Defendants and other HTS franchisees. In sum, Defendants' argument is that Plaintiff, through

its unexplained delay in filing for reexamination, has exploited the legal system in order to cast a

cloud over HTS's business. A stay, they argue, will add to the prejudice imposed on Defendants

by the continuation of this litigation.

Defendants rely on several very similar cases in support of their opposition to a stay. See

Remington Arms Co., Inc. v. Modern Muzzleloading, Inc., No. Civ.A. 97-660, 1998 WL

1037920 (M.D.N.C. Dec. 17, 1998) and Freeman v. Minnesota Min. and Mfg. Co., 661 F.Supp.

886 (D.Del. 1987). In Remington, although the Court denied a stay in part due to the moving

party's delay in filing for reexamination, despite having knowledge of the prior art, the

Remington litigation had progressed much further than the present MDL. The parties in

Remington had submitted dispositive motions, discovery had been completed, and a trial date

had been set. In the instant case, the MDL master-pleadings, applicable to all actions, have only

just been filed. Likewise, in Freeman, the case was "close to trial." 661 F.Supp. at 887.

Moreover, the Freeman case is distinguishable in that it involved a motion to enjoin a party from

seeking reexamination with the PTO, not a motion to stay the litigation.[5]

---

[5] In dicta, the Freeman court commented that, had a motion to stay been submitted to the court, it would have been denied, because discovery had been completed seven months before, and because the party seeking reexamination had known about the prior art for many months.

-10-

Defendants also cite <u>Wayne Automation Corp. v. R.A. Pearson Co.</u>, 782 F.Supp. 516 (E.D. Wash. 1991), one of the few cases in which the plaintiff-patentee sought the reexamination and requested the stay. The <u>Wayne</u> court denied the plaintiff's motion for stay, largely because the defendant had already conducted extensive discovery. In fact, a trial date had already been set. <u>See</u> <u>id</u>. at 517. The court also reasoned that, because the plaintiff had notified the defendant's customers of the pending litigation, a stay would unfairly prejudice the defendant and give the plaintiff an unfair competitive advantage. <u>See</u> <u>id</u>. at 519. While the present case has some similarities to <u>Wayne</u>, the fact that this MDL is still now in its earliest stages strongly supports Plaintiff's motion.

Defendants have submitted convincing evidence tending to show that Plaintiff in fact knew about the two prior art patents as early as May 23, 2000. <u>See</u> Declaration of Jonathan M. Korn, Exs. D-F. The prior art patents were both invented by Edward T. McClain (collectively "the McClain patents"). The first, issued in 1995, is United States Patent 5,460,192 ("the '192 patent"). The second is United States Patent 5,664,593 ("the '593 patent), which stems from a continuation-in-part of McClain's application for the '192 patent.

Plaintiff owns a number of patents in addition to the '333 patent. For instance, Plaintiff owns United States Patent 6,199,557 (the '557 patent), which stems from a continuation-in-part of Plaintiff's application for the '333 patent. In May 2000 the PTO rejected Plaintiff's application for the '557 patent based in part on the McClain '593 patent. <u>See</u> Declaration of Jonathan M. Korn, Ex. E. Plaintiff then amended its application, referencing both of the McClain patents, and asserting that the amended claims overcome the '593 patent. <u>See</u> <u>id</u>., Ex. F. Thus, at least as of May 2000, Plaintiff was fully aware of the two prior art patents. Although

Plaintiff states in its brief that it had no knowledge of the McClain patents during the PTO's examination of the '333 patent (the patent in suit in this MDL), see Brief in Support of Plaintiff's Motion to Stay at 2-3, Plaintiff knew of the McClain patents two years prior to the summer of 2002, about which time Plaintiff began filing its numerous infringement suits.

Nevertheless, this is not a case where the party seeking a stay delayed filing its reexamination request with the PTO until the litigation had progressed well into discovery. Rather, the present MDL is still in its infancy. Indeed, Plaintiff filed its request for reexamination on February 12, 2003, two days before Plaintiff filed its First Amended Complaint, applicable to all actions in this MDL.[6]

Defendants also claim that Plaintiff has new patent applications pending, which it could use to "test" the validity of the '333 patent. See Brief in Opposition to Plaintiff's Motion to Stay at 14-15. Defendants assert that, because Plaintiff's pending patent applications relate back to the '333 patent, Plaintiff "should have waited until it demonstrated that it was able to successfully distinguish itself over the McClain patent during prosecution of one of its many pending applications with the PTO, before commencing an action for infringement." Id. at 14. Defendants do not cite a single case or other legal authority in support of this confusing argument. In any case, the mere fact that Plaintiff could "test" the validity of the '333 patent, vis-a-vis Plaintiff's pending applications, should not preclude a stay of this case pending reexamination.

---

[6] This Court notes that Defendants were free to request reexamination "at any time." 35 U.S.C. § 302.

Defendants next argue that because the reexamination proceeding is "ex parte," Plaintiff will be able to control the reexamination's pace, causing further delay harmful to Defendants. See id. at 15. Defendants cite virtually no authority suggesting that, because Defendants will not be afforded a voice in the PTO proceeding, this Court should refrain from staying the litigation.

Finally, Defendants contend that because a PTO reexamination could last 19 months, Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 n.1 (W.D.N.Y. 1999), a stay pending reexamination will severely prejudice Defendants.[7] Defendants suggest several ways in which this long stay could cause them undue prejudice or disadvantage. Firstly, Plaintiff could continue to publicize this litigation on its website and in other media, undermining the ability of HTS and its franchisees to sustain and grow their businesses. Second, further delay in this MDL could preclude HTS from presenting one of its chief witnesses, Ralph Venuto, who is suffering from terminal cancer. Third, any damages in this case would continue to accrue during the stay (unless tolled). Finally, Plaintiff could sue additional salon owners during the stay period.

**B. Defendants' Motion to Dismiss**

Defendants move this Court to dismiss the present MDL, without prejudice, in light of the PTO reexamination proceedings. Defendants claim that there "are no legitimate reasons for any activity relating to the litigation until after the PTO renders its decision." Brief in Opposition to Plaintiff's Motion to Stay at 16. Accordingly, Defendants move for dismissal of the whole case, or merely dismissal as to the salon owners and distributors. Plaintiff opposes Defendants' motion to dismiss, arguing that such a dismissal would be a "draconian step." Pl. Resp. at 8.

---

[7] Plaintiff disputes that reexamination of the '333 patent will take as long as Defendant suggests, and points out that the patent statute itself requires the PTO to conduct ex parte reexamination proceedings "with special dispatch." 35 U.S.C. § 305.

Plaintiff emphasizes that the parties have already expended considerable time and resources and that Plaintiff "has done nothing to warrant being sent back to square one." Id. at 10.

Defendants argue that dismissal is appropriate here because "dismissal is the only way to ensure that Defendants do not suffer prejudice and Plaintiffs do not continue to exploit the litigation and benefit from their delayed seeking of reexamination."[8] Brief in Opposition to Plaintiff's Motion to Stay at 17. Defendants also argue that, merely by filing its reexamination request, Plaintiff admitted that the '333 patent is invalid. However, in its request for PTO reexamination, Plaintiff made no such admission. Rather, to initiate reexamination, Plaintiff only had to demonstrate to the PTO that the prior art McClain patents raise a "substantial new question of patentability." Order Granting Reexamination at 2 (P.T.O. March 11, 2003). That new question, generally, is whether three claims of the '333 patent – claims 1, 9 and 34 – are anticipated by the McClain patents.

Plaintiff's decision to present to the PTO a "substantial new question" pertaining to the validity of three claims can in no way be distorted into evidence that the patent ultimately must be found invalid, much less an admission of invalidity by Plaintiff. Courts have found that the "grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met . . . does not establish a likelihood of patent invalidity." Remington Arms Co., Inc. v. Modern Muzzleloading, Inc., No. Civ.A. 97-660, 1999 WL 281341, at *9

---

[8] It is important to note that, though this case is still in its early pretrial stages, the parties have expended some amount of resources in litigating transfer issues before the MDL Panel. Moreover, the federal judicial system has invested considerable time in bringing this MDL to its present status.

(M.D.N.C. 1999) (quoting Hoechst Celanese Corp. v. BP Chem. Ltd., 78 F.3d 1575, 1582 (Fed. Cir.1996)).

In its request for reexamination, Plaintiff asserted that "[s]ince claims 1, 9, and 34 in the Laughlin patent do not appear to be patentable over either of the McClain patents, a substantial new question of patentability is raised."  Attachment to Form PTO-1465 (Request for Ex Parte Reexamination Transmittal Form) at 4.  Defendants assert that, as a result of Plaintiff's acknowledgment that certain claims "do not appear to be patentable," this infringement litigation cannot continue without undue prejudice to Defendants.  However, as Plaintiff maintains in its responsive brief, merely suggesting that some claims of the patent "do not appear" to be patentable, given the prior art, "just informs the PTO that [Plaintiff] believes that there is a substantial new question of the patentability."  Pl. Resp. at 6.  The PTO, indeed, could have denied the request for reexamination.

But even if Plaintiff had somehow conceded the invalidity of claims 1, 9 and 34, the invalidity of those three claims would not require a finding that the remaining claims of the '333 patent are invalid.  Although claims 1 and 34 are independent claims, upon which many other claims in the patent are dependent, the law is clear that "[b]ecause dependent claims contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found."  Sandt Technology, Ltd. v. Resco Metal and Plastics, 264 F.3d 1344,1356 (Fed. Cir. 2001).

Dismissal without prejudice is, of course, within the Court's discretion, L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1530 (Fed. Cir. 1995), but such dismissal is not necessary. Although Defendant claims that Plaintiff's reexamination request has "resulted in patent

litigation without a patent," Defendants' Reply Brief at 2, that characterization ignores the fact

that Plaintiff's '333 patent remains presumptively valid until found otherwise by the PTO or a

court.[9]  See 35 U.S.C. § 282 ("A patent shall be presumed valid.").

Defendants rely heavily on L.E.A. Dynatech, 49 F.3d at 1529, in support of their motion

to dismiss.  In L.E.A. Dynatech, the plaintiff, LEA, brought an action for a declaratory judgment

of noninfringement and unenforceability.  The defendant-patentee counterclaimed for

infringement.  Months later, the patentee filed a "reissue" application with the PTO, adding

claims to initiate an "interference" with a third party.[10]  See id.  When the plaintiff learned of the

reissue proceeding it moved the district court for a stay, which was denied.  Thereafter, the PTO

issued a Final Office Action rejecting all claims in the reissue application.  See id.  On the

plaintiff's motion, the district court dismissed the case without prejudice.  The Federal Circuit

affirmed, concluding that the district court did not abuse its discretion.  One factor supporting the

district court's decision was that dismissal without prejudice "eliminated any prejudice to LEA

from the bare existence of the infringement suit."  Id. at 1530.

---

[9]  It is worth noting that in Wayne Automation Corp. v. R.A. Pearson Co., 782 F.Supp.
516 (E.D. Wash. 1991), one of the few cases in which it was the plaintiff-patentee that sought
reexamination and requested a stay, the Court did not even consider dismissing the litigation, and
counsel apparently never raised the prospect of dismissal.  Rather, the Court simply denied the
plaintiff's motion for a stay, largely because the case was in an advanced stage.

[10]  A patent may be reissued by the PTO when the patent is, "through error without any
deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective
specification or drawing, or by reason of the patentee claiming more or less than he had a right to
claim in the patent."  35 U.S.C. § 251.  Reissue requires "surrender" of the original patent.  Id.
An interference is a proceeding in the PTO "to determine any question of patentability and
priority of invention between two or more parties claiming the same patentable invention."  37
C.F.R. § 1.601(i).

The instant case is distinguishable from L.E.A. Dynatech on numerous grounds. First, this case is an MDL; the parties and the judicial system have already invested much time and expense in bringing this complex case to the point of consolidation. Second, L.E.A. Dynatech involved a reissue proceeding, not a reexamination; though the two proceedings have some traits in common, they exist to achieve different ends. Third, in that case, the PTO actually had rejected all of the claims involved in the reissue proceeding; here, the PTO has made no such determination. Finally, the Federal Circuit in L.E.A. Dynatech simply affirmed the district court's dismissal, because the district court had not abused its discretion; the Court of Appeals by no means established a precedential rule that courts must dismiss any action that involves a patent concurrently subject to any PTO proceeding of any kind. Accordingly, the L.E.A. Dynatech case has little, if any, applicability in the present case.

Next, Defendants point out that the PTO may, in its reexamination, cancel or amend certain claims of the '333 patent. Consequently, Defendants argue, Plaintiff's present claims of infringement, which are premised upon the original '333 patent, may fail. However, at this time, the parties and this Court cannot know what the result of the PTO reexamination will be. Moreover, even if the PTO should cancel or amend certain claims of the '333 patent, Defendants could, at that time, move this Court for summary judgment. See Fortel Corp. v. Phone-Mate, Inc., 825 F.2d 1577, 1580 (Fed. Cir. 1987).

In Fortel, cited by Defendants, the PTO, upon reexamination, amended or canceled certain claims of the patent in suit. The district court, in an infringement action brought by the patentee, Fortel, then granted summary judgment for the defendant Phone-Mate, reasoning that

> because no asserted claim in the reexamined patent was without
> substantive change from any claim in the original patent, Fortel had
> no right to enforce those reexamined claims before the date of the
> reexamination certificate.  Because all of the allegedly infringing
> acts occurred before that date . . . Phone-Mate was entitled to
> judgment as a matter of law.

Id. at 1579.  The Federal Circuit affirmed summary judgment for Phone-Mate.  If, following the

PTO's reexamination of the '333 patent, "no asserted claim in the reexamined patent [is] without

substantive change from any claim in the original patent," Defendants will surely have grounds

for filing a motion for summary judgment.

In further support of their motion to dismiss, Defendants refer this Court to a Third

Circuit case, stemming from an alleged breach of a collective bargaining agreement, Eberle

Tanning Co. v. Section 63L, FLM Joint Bd., 682 F.2d 430 (3d Cir. 1982).  In Eberle, as a result

of a seven-day strike, the plaintiff-company filed suit against the labor union involved in the

strike.  The union filed a motion for a stay, on the ground that the collective bargaining

agreement  required the company to arbitrate the dispute.  The district court denied the stay, but

instead dismissed the litigation without prejudice, directing the parties to submit the dispute to

arbitration.  The Court of Appeals affirmed the dismissal, finding that the agreement required

arbitration of the dispute, rather than litigation in federal court.  See id. at 434.

Whatever precedential value the Eberle decision may have in the context of labor-

management arbitration, it has virtually no application with respect to Defendants' motion to

dismiss the present patent MDL as a result of the PTO's decision to reexamine the patent in suit.

The court in Eberle dismissed the action because the arbitration clause precluded the parties from

bringing their dispute to federal court in the first place.  In the instant case, by contrast, this

-18-

litigation can continue, following the reexamination and the stay, irrespective of the result reached by the PTO. Of course, should certain claims of the '333 patent be cancelled or amended, that PTO action may limit Plaintiff's prospects of recovering damages, with respect to certain claims in this litigation. See, e.g., Fortel, 825 F.2d at 1580.

### C. Defendants' Motion to Enjoin

Defendants finally argue that this Court should enjoin Plaintiff from bringing suit against additional HTS salon owners and distributors. Defendant suggests that this dispute should be litigated only between HTS and Plaintiff, without involving the particular salon owners or distributors in the litigation. However, at oral argument, Plaintiff's counsel stated that Plaintiff would agree, as a condition for the Court granting a partial stay, to offer tolling agreements to any HTS salon or distributor prior to filing any additional lawsuits.[11]

Nothing in the patent statute requires a patent owner to sue only certain infringers, or refrain from suing certain direct infringers. See, e.g., 35 U.S.C. § 271(a) (providing that "whoever without authority makes, uses, offers to sell, or sells any patented invention" infringes the patent). While reduction of the number of Defendants in this case would surely simplify future proceedings, Defendants have pointed to no legal authority requiring Plaintiff to sue only HTS itself. All that is required is that Plaintiff have a good faith basis for proceeding against a given defendant.[12] In the present MDL, the mere fact that Plaintiff has requested PTO

---

[11] Transcript of Oral Argument at 29-30.

[12] See, e.g., Lucasey Mfg. Corp. v. Anchor Pad Intern., Inc., 698 F.Supp. 190, 193 (N.D. Cal. 1988) (granting motion for preliminary injunction preventing patent owner from initiating or threatening suit against plaintiff's customers, dealers or distributors; holding that good faith is presumed from proof that patentee owned patent and believed it was valid, but can be negated by proof that patentee failed to sue competitor within reasonable time after its warnings to

reexamination, as well as a stay, cannot establish Plaintiff's bad faith in suing the salon owner Defendants.

Plaintiff alleges in its various suits that the retail salon owners are direct infringers of the method taught in the '333 patent, and are, therefore, appropriate defendants. See First Amended Complaint ¶ 61. By contrast, a manufacturer that only sells certain equipment, without actually using it, would not be a direct infringer of Plaintiff's method patent. See, e.g., Joy Techs. Inc. v. Flakt, Inc., 6 F.3d 770, 773-74 (Fed. Cir. 1993) (explaining that method or process claim is directly infringed only when process is performed, although party's acts in connection with selling equipment may constitute contributory infringement).

Plaintiff also correctly points out that the so called "customer suit exception" has no application in this case. The customer suit exception, in some circumstances, permits a court to stay or enjoin infringement suits brought against the customers of a manufacturer, pending resolution of concurrent litigation between the patentee and the manufacturer itself. See, e.g., Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990). The reasoning behind this rule is that, where a patentee sues a manufacturer's customers for patent infringement, while litigation is also ongoing between the patentee and the manufacturer, the manufacturer "is the true defendant in the customer suit" Id. (quoting Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 737 (1st Cir. 1977)). Because the infringement and/or invalidity issues would likely be resolved in the action between the patentee and the manufacturer, staying or enjoining the customer suits pending such resolution serves the interests of judicial economy. See, e.g., American Acad. of Science v. Novell Inc., 24 U.S.P.Q.2d 1386, 1387 (N.D. Cal. 1992).

_____

competitor's customers).

However, where the patentee alleges that the customers themselves have directly infringed the method or process disclosed in the patent, the customer suit exception does not apply.  See, e.g., id. at 1388; Zemel Bros., Inc. v. Dewey Electronics Corp., No. Civ. A. 82-103, 218 U.S.P.Q. 722, 1982 U.S. Dist. LEXIS 10201, at *5-6 (N.D.N.Y. 1982).

In Zemel Bros., the plaintiff-manufacturer filed a declaratory judgment action against a patentee.  Prior to the commencement of the declaratory judgment suit, the defendant-patentee had filed four separate patent infringement suits against companies that had purchased equipment from the plaintiff-manufacturer.  In these four "customer suits," the patentee claimed that the manufacturer's customers were infringing its patent by carrying out the method or process taught in the patent.  The plaintiff-manufacturer, in the declaratory judgment case, moved the court to enjoin the prior "customer suits."  Id.  The court denied the motion, finding that, because the patent in suit was a method patent, the plaintiff-manufacturer, which allegedly only sold, but did not use the equipment, per se, could be held liable only as a contributory infringer, not a direct infringer.  The "customers," therefore, were not mere customers, but, indeed, "necessary parties" to the prior infringement suits.  Id.  In the instant case, the salon owners are alleged to have actually performed the patented method or process at issue, and are therefore appropriate parties to the patent infringement actions brought by Plaintiff.

## IV.    **Partial Stay**

This Court concludes that the advantages of staying this MDL pending reexamination, discussed in Part III.A, supra, outweigh any potential disadvantages of such a stay.  The Court also concludes that Defendants' Motion to Dismiss should be denied because to grant the motion would be to ignore the strong preference which Congress has given to reexamination proceedings

by virtue of the enabling legislation, as well as the many cases, cited supra, in which courts have ordered stays in litigation similar to this MDL, for reasons of sound judicial administration. However, the stay issued by this Court will be only a partial stay of these proceedings, intended to address the very real concerns expressed by both Plaintiff and Defendants. This Court will also grant Defendants' Motion to Enjoin, in part, and place conditions on Plaintiff's filing of new Complaints against HTS salon owners and distributors.

These MDL proceedings will be stayed only until the earlier of December 1, 2003, or the PTO's issuance of a reexamination certificate, as required by 35 U.S.C. § 307(a). However, if, on or about December 1, 2003, Plaintiff notifies this Court that it reasonably expects the PTO to issue such reexamination certificate soon thereafter, this Court may extend the period of the stay.

During the stay, only the following limited discovery may be conducted with respect to the issues in this case pertaining to infringement or noninfringement, validity or invalidity: Plaintiff may depose two individuals, Defendants may depose two individuals, and both sides may conduct document discovery. Following the stay, the parties will, of course, be free to resume normal discovery relating to all issues.

However, the stay issued by this Court will not in any way prevent Defendants from conducting discovery related to, or otherwise prosecuting, their affirmative claims of unfair competition, defamation, disparagement, and tortious interference with prospective economic advantage, as such claims are entirely separate from the patent invalidity and non-infringement issues. Discovery pertaining to those claims may proceed irrespective of the stay.

Finally, as a condition for the continuance of the stay, prior to suing any additional salon owner or distributor, not yet made a party to the litigation, Plaintiff shall be required to transmit a

letter to such prospective defendant, offering to refrain from suing that prospective defendant, in exchange for a promise that the prospective defendant, if later sued, will not assert as a defense either the doctrine of laches or any limitations period.  If the prospective defendant declines such tolling agreement, Plaintiff may elect to institute litigation.

**V.**    **Conclusion**

For the foregoing reasons, Plaintiff's Motion to Stay will be granted, in part, Defendants' Motion to Dismiss will be denied, Defendants' Motion to Enjoin will be granted, in part, and these MDL proceedings will be partially stayed in accordance with the conditions set forth in this Memorandum.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE LAUGHLIN PRODUCTS, INC.,          :                    MDL Docket No.1498
PATENT LITIGATION                                :
                                                              :

## <u>ORDER</u>

     AND NOW, this          day of May, 2003, it is hereby ORDERED that:

1. The Plaintiff's Motion to Stay is GRANTED, in part;

2. The Defendants' Motion to Dismiss is DENIED, and the Motion to Enjoin is GRANTED, in part;

3. This multi-district litigation is partially stayed in accordance with the conditions detailed in the accompanying Memorandum; and

4. The Court will hold a status conference, by telephone, on September 11, 2003, at 4:30 p.m.

                                  **BY THE COURT:**

                                  _____

                                  **MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL\MDL 1498 Laughlin\IN RE LAUGHLIN PRODUCTS, INC., MDL Docket No.1498, Memorandum.wpd