UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: LAUGHLIN PRODUCTS, INC. PATENT LITIGATION | Honorable Michael M. Baylson<br><br>MDL Docket No. 1498<br><br>ALL CASES |

FILED

DEC 15 2003

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE THE PARTIAL STAY**

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. STATEMENT OF FACTS .......................................................................................... 2

    A. The Laughlin Suits. ........................................................................................... 2

    B. The Status of the Reexamination ...................................................................... 3
        1. The Merged Reexamination ................................................................. 3
        2. The LPI Reexamination ....................................................................... 3

III. LEGAL ARGUMENT ................................................................................................ 6

    A. LPI's Action Should Be Dismissed. .................................................................. 8

    B. Dismissal Is The Only Alternative ................................................................... 11

IV. CONCLUSION ......................................................................................................... 12

I.    **PRELIMINARY STATEMENT**

Defendants seek only to remove the cloud of patent litigation cast over them by Plaintiffs Laughlin Products, Inc. and Dr. Thomas J. Laughlin (collectively, "LPI"). Recent actions by the United States Patent and Trademark Office ("PTO") in the ongoing reexamination proceedings of the claims in LPI's U.S. Patent No. 5,922,333 ("the '333 Patent) dictate that Plaintiffs' actions consolidated in this Court must now be dismissed without prejudice. LPI has not only acknowledged that the '333 Patent's claims raise substantial new questions of patentability, the PTO has repeatedly rejected all of the claims of the '333 Patent, soundly refuting LPI's marketing ploy that it was the first ever to conceive of the idea of self-tanning in a booth. Despite this, LPI has continued to "promote" its patent infringement actions against Hollywood Tanning Systems, Inc. ("HTS") in the marketplace, and indeed will continue to threaten potential customers of HTS with litigation if they conduct business with HTS.

The current status of the litigation has placed Defendants in an untenable position. In particular, discovery is ongoing relating to claims of the '333 Patent that have been rejected by the PTO and Defendants are being asked to produce confidential and proprietary information based upon the remote chance that LPI's claims may be revived. The only way to correct this inequity is to dismiss the litigation without prejudice. The only other alternative, so as not to reward LPI for its tactics, is to vacate the stay and to permit Defendants to move expeditiously towards a dispositive motion.[1]

---

[1] As will be addressed in opposition to Plaintiffs' Motion to Compel, the option of vacating the stay should not be construed as any consent by Defendants that Plaintiffs' discovery requests are proper.

1

## II. STATEMENT OF FACTS

### A. The Laughlin Suits

LPI has filed a barrage of identical patent infringement suits against approximately 80 HTS salon owners of 49 HTS salons, as well as Heartland, an HTS distributor and Riviera Sun Tanning, a customer of Heartland. (collectively, the "Laughlin suits"). The Laughlin suits each allege that Defendants' "use" of the HTS system is an infringement of the '333 Patent. Despite LPI owning ten additional U.S. patents directed to self-tanning, no other patents are implicated in the suit. Due to the number of actions brought by LPI, HTS sought to reduce the burden, complexity, and expense of defending identical suits pending simultaneously in eleven different courts, and to avoid the possibility of contradictory outcomes. Therefore, on August 9, 2002, HTS filed a motion to transfer all of the actions pursuant to multi-district litigation procedures. The Judicial Panel on Multidistrict Litigation issued its Transfer Order on January 9, 2003, and Conditional Transfer Orders on January 28, 2003, March 6, 2003 and October 20, 2003.

In response to the Laughlin suits, HTS filed a declaratory judgment action against Laughlin Products, Inc. and Dr. Laughlin in the United States District Court for the District of New Jersey (the "HTS suit"). The HTS suit seeks a declaration of non-infringement and invalidity, and also raises claims of defamation, disparagement, unfair competition, and tortious interference with prospective economic advantage. That suit has also been transferred to this Court.

Recently, in an attempt to prevent Defendants from offering the public the complete picture of the status of LPI's '333 Patent, LPI has sued Defendant HTS and its public relations firm for defamation and disparagement. Defendant HTS has sought to have that suit consolidated before this Court.

2

### B. The Status of The Reexamination

#### 1. The Merged Reexamination

The '333 Patent is the subject of three *ex parte* reexamination proceedings that have been merged into a single proceeding by the PTO. The first request for reexamination was filed by the patent owner LPI itself on February 12, 2003. The PTO granted Laughlin's request on March 12, 2003, and assigned it control number 90/006,547 ("the LPI Reexam"). The second request for reexamination was filed by ETS on June 10, 2003. The PTO granted ETS' request on July 28, 2003, and assigned it control number 90/006,663 ("the ETS Reexam"). The third request for reexamination was filed by HTS on July 14, 2003. The PTO granted HTS' request on August 20, 2003, and assigned it control number 90/006,711 ("the HTS Reexam").

The ETS Reexam and the HTS Reexam submitted arguments as to the invalidity of the '333 Patent claims. The PTO granted both of those requests. Upon granting the HTS Reexam, the PTO merged the LPI Reexam, the ETS Reexam, and the HTS Reexam on August 27, 2003 into a single proceeding ("the Merged Reexam"). See Motion, Exhibit "A." However, ETS and HTS are not permitted to participate in the *ex parte* reexamination proceedings following the filing of a request for reexamination. Accordingly, once the ETS and HTS reexams were granted, prosecution is conducted only between the PTO and LPI.

#### 2. The LPI Reexamination

Nearly nine months after unleashing its rash of lawsuits against HTS, LPI abruptly changed course and filed its *ex parte* request for reexamination with the PTO. This procedure allows that:

> Any person at any time may file a request for
> reexamination by the [U.S. Patent and Trademark] Office
> of any claim of a patent on the basis of any prior art cited…
> The request must set forth the pertinency and manner of

3

>  applying cited prior art to every claim for which
>  reexamination is requested.

35 U.S.C. §301. To do so, the request for reexamination must include a "statement pointing out each substantial new question of patentability based on prior patents and printed publications." 37 C.F.R. §1.510 (b)(1).

LPI's request for reexamination of the '333 Patent was based upon U.S. Patent Nos. 5,665,593 and 5,460,192 (collectively, the "McClain patents"). In its request, LPI recites what it has known since May 2000 -- that "[c]laims 1, 9, and 34 appear to be anticipated under 35 U.S.C. §102(b) by [the McClain patents]," and "[s]ince claims 1, 9, and 34 in the Laughlin ['333] patent do not appear to be patentable over either of the McClain patents, a substantial new question of patentability is raised." See Motion, Exhibit "B." LPI filed its request for reexamination to avoid a determination from this Court that the '333 Patent is invalid due to the McClain patents, hoping that an *ex parte* review by the PTO will provide a more favorable forum.

At the time it filed its request for reexamination, LPI filed an Amendment ("First LPI Amendment") which altered all of the claims to include the limitation of "providing an enclosure for receiving the entire body and head of a person to be coated" (i.e., the "head limitation"). Id., Exhibit "C." LPI argued that the addition of the head limitation rendered the amended claims patentable over the prior art, and specifically over the McClain patents. Id.

On March 12, 2003, the PTO granted LPI's request for reexamination of the '333 Patent, stating that the PTO "agreed [with LPI] that the [McClain] patents present an issue of anticipation" and therefore necessarily raise a substantial question of patentability. Id., Exhibit "D." On May 5, 2003, LPI filed a Preliminary Amendment ("Second LPI Amendment"), placing all of the dependent claims in independent form. Id., Exhibit "E."

4

On July 15, 2003, the PTO issued a first Non-Final Office Action in LPI's Reexam ("First PTO Action"). Id., Exhibit "F." The First PTO Office Action rejected claims 1, 9-10, 26, 28, 31-32, and 34 under 35 U.S.C. §102 as being "anticipated" by U.S. Patent No. 5,664,593 ("the '593 McClain patent"). The PTO further rejected claims 1-2, 5, 8, 10, 34-35, and 38 under 35 U.S.C. §103 as being unpatentable for obviousness over the '593 McClain patent and another patent. Thus, the First PTO Action confirms the PTO's initial review of Plaintiff's Request for Reexamination as raising a substantial new question of patentability and that the newly-cited patents presented issues of anticipation and obviousness to claims of the '333 Patent. The First PTO Action takes into account all the prior Amendments and arguments of patentability that were made by LPI. The PTO also rejected claims 2-8, 10-33 and 35-40 under 35 U.S.C. §112, for failing to distinctly claim the invention, and noting that claims 1, 9 and 34 lack antecedent basis for the term "tanning," which is an issue that is not considered in a reexamination proceeding.

On September 23, 2003, LPI conducted a personal interview with the PTO examiner and supervisory examiner to address the rejections raised in the First PTO Action. The PTO indicated that "agreement was not reached" as a result of that interview. Id., Exhibit "G." Accordingly, LPI filed an Amendment on October 14, 2003 ("Third LPI Amendment"), and a Supplemental Response to Office Action on October 20, 2003 ("Fourth LPI Amendment"). Id., Exhibits "H" and "I."

In the Third LPI Amendment, Plaintiff submitted a 9-page Declaration by Dr. Thomas J. Laughlin, the inventor. In that Declaration, Dr. Laughlin makes representations about: his conception of the alleged invention, the meaning of certain claim terms of the '333 Patent, the inoperability of the prior art, the teachings of the McClain patent as relating to obviousness, and

5

the commercial success of the alleged invention as showing non-obviousness of the '333 Patent. Plaintiff's arguments to the PTO are of the type that this Court will have to reconsider if the PTO does not cancel the claims of the '333 Patent through the reexamination. Although it is likely that the claims will be cancelled, Defendants would be in a better position than the PTO to investigate the facts asserted by Dr. Laughlin's declaration and Defendants would certainly present contradictory evidence to this Court for its consideration. Since Defendants do not have an opportunity to present evidence to the PTO, the value of the PTO's final decision, to the extent that it relies upon subjective information such as the Laughlin declaration, is necessarily constrained by the information presented by the Plaintiff.

On December 4, 2003, after considering LPI's additional amendments, the PTO issued a second Non-Final Office Action in the Merged Reexam ("Second PTO Action"). Id., Exhibit "J." In that action, the PTO objected to the head limitation as broadening the scope of the '333 Patent claims, an impermissible procedure during a reexamination.[2] Id., p. 3. The PTO also objected that the claims were impermissibly broadened by the term "sunless tanning human skin" since the original claims were to a "coating method" and not a tanning method. Id. In addition, the PTO rejected all of the pending claims based on the '593 McClain patent, combined with U.S. Patent No. 2,949,403 to Andreadis and U.S. Patent No. 1,982,509 to Frank. Id.

## III.  LEGAL ARGUMENT

HTS was before this Court six months ago arguing that LPI was unfairly holding it hostage based on tenuous patent claims. LPI has continued to take full advantage of the legal

---

[2] "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." 35 U.S.C. §305. "A claim is broader in scope than the original claims if it contains within its scope any conceivable product or process which would not have infringed the original patent. a claim is broadened if it is broader in any one respect, even though it may be narrower in other respects." See Second PTO Action, p. 2, Motion, Exhibit J (emphasis in original).

6

system and PTO proceedings in this matter to keep HTS under the cloud of patent infringement suits. During these last six months, the PTO has progressed in the reexamination process by confirming that the original claims are not patentable over the prior art and twice rejecting all of LPI's amended claims. See Motion, Exhibits "F" and "J." The PTO has given no indication that any of the claims contain patentable subject matter. Despite the precariousness of the claims of the '333 Patent, LPI inexplicably continues to claim inventorship of all tanning booth technology and the right to exclude all competitors from the marketplace.

LPI, in a press release relating to other litigation, acknowledged that the examination process could take months or years. See Motion, Exhibit "K." In so stating, LPI acknowledges that it will not be satisfied with the PTO decision and intends to exhaust all levels of appeal. During this reexamination process, LPI has not sought to retain the original claims of the '333 Patent but instead to add amended and substantially different claims. In absolute contradiction to its positions before the PTO, LPI has indicated in a recent press release that it intends to enforce the original claims of the '333 Patent:

> [A]ccording to U.S. patent law, the '333 Patent is valid and binding throughout the reexamination process. It will remain so unless the patent office rules otherwise. While the reexamination is pending, Laughlin Products remains fully committed to enforcing its '333 Patent rights...against any infringers. This commitment was demonstrated once again by the extensive litigation recently initiated by Laughlin Products against Magic Tan, Inc.

See Motion, Exhibit "K." In that same press release, LPI boasts about Defendants' inability to appeal any final decision. Id. LPI, therefore, is admittedly using the lengthy reexamination process to shield the rejected claims of the '333 Patent so as to allow it to harass competitors with patent claims that are tenuous at best. LPI's continuing claim that it was the inventor of the tanning method used in the HTS booth is belied by the prior art and the PTO's recent decisions.

7

Indeed, faced with similar attacks from LPI in the United Kingdom, HTS aggressively prosecuted its claims and obtained a resolution that confirmed that HTS did not infringe LPI's patents. See Order, Motion, Exhibit "K."

Thus, the circumstances have dramatically changed since this Court's initial decision on May 29, 2003. Defendants are faced with two alternatives:

1. Seek to have the litigation dismissed without prejudice.
2. Remove the stay to permit this Court to, as expeditiously as possible, render a dispositive decision on the validity of the '333 Patent.

As will be argued thoroughly below, at this point, dismissal without prejudice best balances the merits, fairness to the parties and the resources of both the courts and the PTO.

### A. LPI's Action Should Be Dismissed.

This Court should dismiss LPI's action in its entirety.[3] A stay or partial stay, in light of the actions of the PTO, and the actions of LPI in the marketplace, improperly lends legitimacy to LPI's lawsuits. In this case, a dismissal is the only way to relieve the Defendants from continuing to suffer prejudice by LPI continuing to exploit the litigation and benefit from their delayed seeking of reexamination.

Six months has passed since this Court's decision to partially stay the litigation, and even longer has passed since LPI filed its first complaint against HTS. That stay was scheduled to expire on December 1, 2003. In light of the events of the past six months, especially the December 4, 2003 PTO Office Action, a dismissal is now warranted.

A dismissal without prejudice strikes the proper balance to resolve all of the issues before this Court. A stay or partial stay inequitably permits LPI to continue to assert the '333 Patent,

---

[3] To the extent that LPI's most recent action against HTS is consolidated before this Court, then all non-patent claims of all parties could proceed in this Court.

8

which claims are presently unknown, against HTS. However, the continued litigation of the invalidity and infringement issues is impossible since the ultimate claims of the '333 Patent are unknown. On the other hand, this Court has complete discretion to dismiss these actions without prejudice and permit reinstatement by motion if the PTO reexamination and the lengthy reexamination and appeals process results in the issuance of viable claims for the '333 Patent.[4]

As this Court is aware, courts have granted dismissals without prejudice of patent infringement suits pending reexamination. See International Rectifier Corporation v. SGS-Thomson, 73 F.3d 375 (Fed. Cir. 1995); see also Hamilton Industries, Inc. v. Midwest Folding Products Mfg. Corp., 1990 WL 37642*2 (N.D. Ill. March 20, 1990) (a copy of this decision is attached hereto as Exhibit "A"); L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1530 (Fed. Cir. 1995).[5] The dismissal can be structured for this Court to retain jurisdiction and to have the litigation reinstated before this Court if any non-frivolous claims remain against HTS after reexamination. Id. Although courts have treated dismissals without prejudice as equivalent to a stay, in light of these facts, where – (1) the PTO has twice rejected all claims of the patent-in-suit; (2) LPI inexplicably did not seek reexamination based on the McClain patents, which it knew about for close to three years before it filed its barrage of litigation against HTS; (3) LPI has aggressively promoted the pendency of the litigation to the competitive disadvantage of HTS; (4) LPI has now sued HTS for publicizing the reexamination which was done, in part, to

---

[4] HTS should be permitted a period of 3 months following any final resolution of the present Merged Reexam proceedings to file a request for reexamination based on any additional prior art it may have accumulated at such time.

[5] This Court also has the discretion under Fed. R. Civ. Proc. 41(b) to dismiss these actions without prejudice. That Rule is utilized when a plaintiff fails to prosecute an action. In this case, Plaintiff seeks to delay these actions and this delay could last for a year or more. When faced with such a substantial delay and in an effort to clear their calendar, courts are afforded the discretion to dismiss. Fed. R. Civ. P. 41(b).

confront the misrepresentations and omissions propagated by LPI; and these claims, along with HTS' affirmative claims, will continue to be litigated before this Court; (5) the PTO's final decision, which will then be subject to LPI's appeal, will not realistically be resolved until March 2004, at the earliest; and (6) the reexamination will likely either cancel all of the original and amended claims of the '333 Patent or issue all new amended claims -- a dismissal would be the preferred procedure. Even if the PTO issues new amended claims, LPI would then have to analyze whether any of these new claims are infringed by HTS or its salon owners or distributors. A dismissal would acknowledge the need for this fresh analysis, whereas a stay would simply continue the litigation which was filed based on claims that no longer exist.

The futility of keeping LPI's patent suit on the Court's docket is best demonstrated by the scenarios that are possible from the reexamination. The best case scenario for LPI, albeit an unlikely one, is that its suggested amendments are adopted by the PTO. Courts have acknowledged the distinction between original claims and amended claims of a patent-in-suit if they emerge from a reexamination proceeding. As an initial matter, and as confirmed by the PTO in its December 4, 2003 Office Action, LPI cannot obtain broader claims through the reexamination process. "In any reexamination proceeding…, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, [but] [n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted…" 35 U.S.C. § 305; see also Total Containment, Inc. v. Environ Products, Inc., 922 F. Supp. 1385 (E.D.Pa.1995), aff'd in part, vacated in part on other grounds, 106 F. 3d. 427 (Fed. Cir. 1997).

Patent owners also cannot exploit narrower amended claims, to the extent that LPI is successful in overturning the PTO's rejection of all of the claims of the '333 Patent, to obtain infringement damages flowing back to the original claims. In this case, LPI's proposed amended

10

claims are "substantively changed" from the original claims of the '333 Patent. Since they have been "substantively changed", LPI cannot obtain any damages for any of Defendants' conduct prior to the issuance of the amended claims, if and when that occurs. See Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998); see also General Electric Company v. Hoechst Celanese Corporation, 698 F. Supp. 1181, 1185 (D. Del. 1988). Therefore, litigation and accompanying discovery as to the original claims of the '333 Patent would have been unnecessary. The more likely scenario, which would be a final rejection and cancellation of both the original and amended claims of the '333 Patent, also raises doubts as to the need and viability of the present patent action.

Irrespective, both scenarios support the dismissal of the patent litigation without prejudice. If nothing else, a dismissal without prejudice will level the playing field and help protect HTS from LPI's questionable filing of multiple lawsuits and questionable publication of that litigation.

**B.     A Partial Or Complete Stay Is Not A Viable Alternative**

The last six months have demonstrated that a partial or complete stay are not viable options. A partial stay has two fundamental flaws. First, a partial stay forces Defendants to disclose documents and appear for depositions on a patent whose claims and amended claims have been preliminarily rejected by the PTO. At the same time, a partial stay inhibits Defendants' ability to move towards a disposition of the litigation. Second, all discovery completed, especially depositions, may have to be repeated upon the PTO's final, non-appealable decision. Of course, if the PTO decision is consistent with its rulings to date then the discovery would have been unnecessary.

As suggested by this Court in its initial decision, if the Defendants' Motion to Dismiss was denied and the stay was vacated, Defendants would move expeditiously for summary judgment on the original claims of the '333 Patent. Although such an order from the Court would be of limited legal precedent since if the '333 Patent is to emerge from reexamination it will likely have amended claims, which will have to be the subject of all new discovery and another dispositive motion, the order would have tremendous strategic value. The overriding reason for seeking such an order is intertwined with the reasons that dictate a dismissal. LPI has flooded the market with misinformation on the status of the litigation and the impact of the reexamination. The only way to combat that is either through the dismissal of the action or through the circulation of a court order granting Defendants' dispositive motion that is immune from LPI's spin and manipulation.[6]

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that it be restored to the *status quo* pending the PTO's decision on reexamination. Accordingly, Defendants request that Plaintiffs' Complaints for patent infringement be dismissed without prejudice.[7] In the alternative, consistent with this Court's May 29, 2003 opinion holding that the partial stay expires after December 1, 2003, Defendants request the vacation of the partial stay.

---

[6] Defendants' efforts to confront the misinformation on it own has resulted in LPI's suing Defendants for defamation. A copy of that Complaint was previously forwarded to this Court by LPI.

[7] Defendants further submit that, should LPI assert the '333 Patent against HTS and/or its franchisees/customers after it emerges from reexamination, this court should retain jurisdiction over all parties.

Dated:  December 12, 2003

By:  LAURENCE S. SHTASEL
BLANK ROME LLP
One Logan Square
Philadelphia, Pennsylvania  19103
(215) 569-5500

JONATHAN M. KORN
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey  08002
(856) 779-3600

Attorneys for Defendants

112139.00601/30242763v1

# EXHIBIT A

1990 WL 37642
(Cite as: 1990 WL 37642 (N.D.Ill.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

HAMILTON INDUSTRIES, INC., an Illinois Corporation, Plaintiff,
v.
MIDWEST FOLDING PRODUCTS MFG. CORP., an Illinois Corporation, Defendant.

No. 89 C 8696.

March 20, 1990.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

*1 This matter is before us on the defendant Midwest Folding Products' motion for a stay pending reexamination of U.S. Patent No. 4,819,569 by the Patent and Trademark Office ("PTO"). The plaintiff, Hamilton Industries, opposes the motion. For the following reasons we grant the defendant's motion and dismiss this action with leave to reinstate subsequent to the patent reexamination.

In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion as a means of preventing "costly pre-trial maneuvering which attempts to circumvent the reexamination procedure [and to] provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner." H.R.Rep. No 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463.

With this in mind we turn to Hamilton's three reasons for opposing the motion. First, Hamilton claims that the defendant is seeking a stay simply for the sake of delay in an attempt to "frustrate the judicial process and Hamilton's right to exclude [Midwest Folding] from use of its property." Midwest Folding, however, is entitled by law to request a reexamination of the patent. 35 U.S.C. §§ 302-307; 37 CFR § 1.525. The reexamination procedure was created to promote speedy and less costly review of the validity of patents in certain limited situations. The fact that the PTO granted Midwest Folding's request for reexamination indicates that the PTO deems it worthy of further consideration. Even assuming there has been some strategic behavior in this case (of which it is not readily apparent that Hamilton is not also guilty), it occurred fairly contemporaneously and was well within the rights of Midwest Folding. Midwest Folding invoked the reexamination procedure on December 7, 1989, after learning that Hamilton was threatening suit, after first notifying Hamilton that it intended to make the request on November 19, 1989, and only two weeks after Hamilton ultimately filed suit in this Court. Midwest Folding's decision to request reexamination did not occur so late in the proceedings as to warrant the conclusion that it was solely pursued for the purposes of delay.

Second, Hamilton claims that the reexamination will not affect this action or facilitate its prosecution. We disagree. The issue of the patent's validity is clearly one that will have to be resolved in this case. We believe that shifting the validity issue to the PTO in this case will provide the many advantages found by courts as grounds for a stay:
1. All prior art presented to the Court will have been first considered by the PTO with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
*2 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
7. The cost will likely be reduced both for the parties and the Court.

See, e.g., Emhart Indus., Inc. v. Sanyo Seiki Mfg. Co., No. 85 C 7565, slip op. (N.D. Ill. January 30, 1987). Further, once a request for reexamination has been granted, the Commissioner lacks the power to stay the reexamination pending the outcome of an overlapping proceeding in federal

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1990 WL 37642
(Cite as: 1990 WL 37642 (N.D.Ill.))

Page 2

court. See Ethicon Inc. v. Quigg, 849 F.2d 1422 (Fed. Cir. 1988). We see no reason why parallel proceedings should be required here and we believe that this litigation may materially benefit from the PTO's disposition of the validity issue.

Finally, Hamilton argues that it will suffer harm from a stay. The only harm which Hamilton contends will occur as a result of the stay is that the stay will delay the imposition of an injunction and thereby deny Hamilton its "right to exclude." The question whether or not an injunction will issue in this case, however, will turn upon resolution of the patent's validity. Thus, any delay occasioned by that determination will occur regardless of the forum in which that issue is considered. And we find that, given Congress's mandate that the PTO conduct the patent reexamination expeditiously--that is, "with special dispatch"--it is likely that resolution of the validity issue will occur more swiftly than it would here. Hamilton additionally contends that piecemeal resolution of the validity and infringement issues would increase Hamilton's costs. We see no basis for this contention. To the contrary, we believe that an increase in costs is more likely to result from the inevitable parallel proceedings that would occur were we to refuse to stay this action. As we discussed above, the Commissioner lacks the authority to stay the reexamination. Thus, even if by some chance we were to reach the validity issue before the PTO does, and even if the PTO then exercised its discretion in deferring to our ruling (which the PTO is by no means bound to do), increased costs nevertheless would be incurred in both forums during the race to the patent validity determination. We will concede that race to the PTO. [FN1]

> FN1 Hamilton also contends that Midwest Folding "will likely seek another reexamination upon completion of the present reexamination." We disregard that contention as having no basis at this time.

We grant the defendant's motion and order this action dismissed with leave to reinstate in the event issues remain after the PTO's consideration of Midwest Folding's request for reexamination. If such be the case, these issues will be disposed of promptly by the Court. It is so ordered.

1990 WL 37642, 1990 WL 37642 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works